DEBORAH M. SMITH
Acting United States Attorney

RETTA-RAE RANDALL
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:05-CR-100-RRB |
| | ) | |
| Plaintiff, | ) | **TRIAL BRIEF OF THE** |
| | ) | **UNITED STATES** |
| vs. | ) | |
| | ) | |
| HOLLY MATSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I.   INTRODUCTION

The defendant is charged with one count of Theft of Postal Money Orders in

violation of 18 U.S.C. § 500.  The trial of the above matter is set to begin on May 8,

2006 in Anchorage. There are no pretrial motions pending before the court. At this time the government expects to call approximately 8 witnesses. The government has provided the defendant with a certified copy of the Voluntary Petition in Bankruptcy filed by Holly and Henry Matson on June 11, 2004, which includes a Verification of Creditor Matrix. The government anticipates that it should be able to present its case in 2 days.

II.   STATEMENT OF THE CASE

Holly Matson ("Matson") was a contract employee of the United States Postal Service at the Port Heiden Contract Post Office (CPO) since April 27, 1983, being terminated on December 31, 2003, when this theft was discovered. At the time the contract was terminated, the contract paid Matson $19,800 per year, or $1,650 per month, to operate the post office.

During her employment, Matson was audited by the King Salmon Postmaster May 20, 1998, February 15, 2000, and May 14, 2001. The audits did not contain any discrepancies with the money orders issued from the Port Heiden CPO.

The investigation was initiated because money orders issued by the Post Office were being cashed before their reported issue date. Some of the money orders were negotiated up to three months before being reported as sold, which means they cleared the Federal Reserve Bank as being cashed, but the money used to purchase the money

orders had yet to be reported and remitted to the Postal Service. The Postal Service suspected Matson of kiting money orders since February 2003, using the cash received and then turning it in at a later date. (The Port Heiden CPO did not take credit or debit cards; money orders had to be purchased with cash, or specific companies' payroll checks.)

Money orders are issued to contract stations in blocks of 100 and are to be issued in sequence. The postal clerks are held personally responsible for the value of any money orders that are sold but not properly accounted for to the Postal Service. In fact, Matson's contract specifically states that "¶19: All monies received from the operation of the Contract Unit are property of the U.S. Postal Service, and not the property of the contractor. Such monies shall not be commingled with personal or other funds of the contractor, and shall not be used for any purpose other than in connection with the postal duties and functions of the Contract Unit. The contractor shall account for such monies at the close of each day's business." "¶20. during periods when the contract Unit is closed, or is unattended for any reason, all monies and postage supplies, **including money order forms**, shall be kept in the safe, which must be securely locked by at least three complete turns of the combination dial. Envelope and postal card stock may be kept in a suitable cabinet, provided that it is kept locked." (Emphasis added.)

Each money order has a 10-digit serial number, and an eleventh digit, which constitutes the check digit. Each money order consists of the original (the negotiable instrument), a receipt copy for the customer, and a voucher copy for the Post Office finance records. Contract stations are required to complete a Daily Financial Report, PS Form 1412. The voucher copies of the money orders sold are to accompany the submitted Forms 1412.

In examining the PS Form 1412's submitted by Matson, as far back as April 2001, the Port Heiden Post Office was approximately 30 days behind in reporting money orders, the average increased to 47 days in 2002, and to 79 days in 2003. On the last daily transaction report submitted by Matson in December 2003, she was reporting money orders that were imprinted in August and September 2003. The U.S. Postal Inspection Service has a database entitled National Money Order Coordinator Reports. In this database a report named an Edit 29 will show money orders that were cashed prior to the date they were reported as sold. This report will show that money orders issued from Port Heiden (Office No. 996132) in September and October 2003 were being cashed two months before reported as sold.

On the daily transaction reports, there is a block for the signature of the person who prepared the form and a block for the date. From January 2001 through April 2001, Matson signed and dated each Form. The dates matched the issue dates on the

money order vouchers although they were not input into the money order voucher system for up to a month later. After April 2001 through December 2003, Matson did not place a date on any PS Form 1412.

On December 29, 2003, Post Office Investigators arrived at the Port Heiden Post Office; Matson was told of the problem and interviewed. She claimed to be behind in reporting her money orders, and that her drawer would be short about $10,000.

Upon opening her cash drawer over 400 consecutively numbered money order vouchers were discovered, totaling in excess of $80,000. There were 422 money order vouchers and 11 void money orders. The money orders had been issued on various dates between September and December 2003, and negotiated. Neither cash nor fees had been remitted to the Postal Service for these money orders. The audit revealed a shortage of $71,990.99 (deducting what cash was found at the post office on that day). The money orders had never been reported lost or stolen.

Images of the money orders represented by the 422 money order vouchers were retrieved through the USPS Money Order Image Delivery System (MOIDS). These images show who used the money orders and what the money orders were used for. A spreadsheet showing the payee information for all 422 money order vouchers, and 11 voided money orders found in the post office, will be used as a summary exhibit

at trial; analysis of this spreadsheet indicated that individuals with the last name of "Matson" used 212 of the 422 negotiated money orders, for a total of $33,310.59. Of those 212 money orders, the name "Holly Matson" appears on 74 of the money orders for a total of $13,035.52. Cash equal to the negotiated money orders was never deposited into the post office account, nor found at the post office at the time of the investigation.

Credit reports for Matson and her husband, Henry Matson, reveal that in June, 2004, six months after Matson lost her postal contract, the couple filed for Chapter 7 bankruptcy. In the bankruptcy filing there is no employment listed for Henry Matson; Matson lists herself as having been employed for seven years as a store clerk in Port Heiden at Jack's New Meshik Mall where the post office was located. The couple disclosed they had an estimated $40,385 in assets which included a 22 foot boat valued at $35,000. They had $76,330.09 in debts, with the largest creditors being the IRS, City of Port Heiden, Wells Fargo Bank, and Sears. Many of the money orders were written to these creditors.

Two other individuals covered for Matson when she was on vacation or ill. However, subsequent investigation revealed that one of the individuals worked no more than a total of two weeks a year, when Matson was sick or needed a day off; the other, the defendant's sister, Ruth Orloff, had not worked at the post office since

October, 2003. Neither of these employees completed any of the paperwork or deposits.

III.    EVIDENCE

    A.    Witnesses

As noted above the government anticipates calling approximately 8 witnesses.

    B.    Documents

The government will be introducing the money order vouchers, the money order images retrieved from the MOIDS system, audits recorded on PS Forms 3294, PS Forms 1412 (the daily financial reports submitted by Matson), Edit 29 reports, bankruptcy records and two handwritten statements and a summary of one oral statement Matson made to Postal Inspectors.

IV.    EVIDENTIARY ISSUES

    A.    Stipulations

The parties have not entered into any stipulations at this time.

    B.    Statements of the Defendant and Local Rule 2 Notice

The government has previously disclosed, pursuant to Criminal Rule 16(a)(1), all of the defendants' statements that were made to law enforcement officers.

C.    Evidence of Defendant's Prior Conduct

Rule 404(b), Fed. R. Evid., permits the use of evidence of other crimes, wrongs or acts as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, subject to the relevance requirements of Rules 402 and 403. Testimony will be presented describing Matson's conduct before December, 2003, as a "money order kiting" operation. Issuing money orders which are cashed before they are reported and paid for by the postal clerk, issuing a large number of the money orders to herself and family members, being short of cash to cover for the money orders found in her drawer is valid proof of a Title 18 U.S.C. §500 charge. See United States v. Anderson, 151 Fed.Appx. 894 (11th Cir. 2005)[1]  Such evidence is not properly characterized as 404(b) evidence, but is "inextricably intertwined" with the charged offenses. See United States v. Soliman, 813 F.2d 227, 279 (9th Cir. 1987).

D.    Reciprocal Discovery Issues

Pursuant to Rule 16, Fed. R. Crim. P., all parties to the instant action have been under an obligation of reciprocal discovery. The United States has provided all discoverable items to the defendant and her attorney. As of the present date, the United States has yet to receive a single document or item in discovery from the

---

[1] This is an Unpublished Disposition properly cited under CTA11 Rule 36-2 (This case has been attached as Exhibit 1).

defendant. To the extent that the defendant attempts to introduce any evidence not provided to the United States pursuant to her obligations under Rule 16(b), the government will seek a preclusion order. See Taylor v. Illinois, 484 U.S. 400, 108 S. Ct. 646 (1988) [upholding constitutionality of preclusion of defense witness withheld from prosecution in violation of discovery rules].

E.     Limits of Relevant Defenses

The United States will be filing a *Motion In Limine* to preclude any evidence as an intent to repay as a defense in this case. See United States v. Ross, 206 F.3d 896, 899 (9th Cir. 2000).

Rule 403, Fed. R. Evid., provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See also, United States v. Brannon, 616 F.2d 413, (9th Cir. 1980), cert. denied, 447 U.S. 908. The trial court has broad discretion in determining admissibility under Rule 403. United States v. Moore, 552 F.2d 1068, 1079 (9th Cir. 1975), cert. denied, 423 U.S. 1049 (1976).

F.     Charts and Summaries

Federal Rule of Evidence 1006 provides,

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in

> court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

Although Rule 1006 explicitly allows for their introduction, summaries must satisfy a number of additional factors to be deemed admissible. Generally, (1) the original documents (or photographs, etc.) upon which the summary is based must have been made available to the opposing party prior to the use of the summary in court; (2) the underlying original documents must themselves be deemed admissible for the summary to be admissible. <u>See</u> Christopher B. Mueller & Laird C. Kirkpatrick, Evidence 315-316 (1997); 6 Weinstein §§ 1106.05[3], 1006.06[1], 1006.06[3], at 1006-12, 1106-14 to 1006-16, 1006-17 to 1006-19;

Summaries introduced under Rule 1006 are themselves evidence, and are thus distinct from summaries used for demonstrative (or "pedagogical,") purposes. See 6 Weinstein § 1006.04[5], at 1006-10. See also Bray, 139 F.3d at 1112; 1 Edward J. Devitt et al., Federal Jury Practice and Instructions § 14.02 (4th ed. 1992); 1 Leonard B. Sand et al., Modern Federal Jury Instructions (Criminal) § 5.05, at 5-34 (1997). Although the underlying original documents upon which the summaries are based must themselves be admissible, they do not have to actually be received into evidence

as a prerequisite for the admission of the summaries. See 6 Weinstein § 1006.04[3], at 1006-8.

The use of demonstrative summaries is typically permitted under Rule 611(a), and does not involve Rule 1006. That is, demonstrative summaries are meant to aid the jury in "the ascertainment of the truth, avoid needless consumption of time, and protect witnesses from harassment or undue embarrassment." Rule 611(a). Demonstrative summaries are not necessarily in lieu of "voluminous" materials. In fact, they are typically used to help the jury process other evidence (e.g. an organizational chart of a crime family is not itself evidence, it is only meant to help the jury sort testimony as it is given). Hence, they are not themselves evidence and a limiting instruction as to this point is required. See Bray, 139 F.3d at 1112. See also 1 Devitt, supra, § 14.02; 1 Sand, supra, § 5.05, at 5-35. The trial court has discretion to permit a party to use a "pedagogical device [] to summarize or organize testimony or documents which have themselves been admitted into evidence." Weinstein's Evidence, ¶ 10006[07], at 1006-15. It should be noted that when such evidence is admitted in this fashion, the preferred practice is for the court to give a limiting instruction for this purpose. United States v. Howard, 774 F.2d 838, 844. The Ninth Circuit has approved the use of summary witnesses both for voluminous materials and to avoid jury confusion. United States v. Baker, 10 F.3d 1374, 1412 (9th

Cir.1993) (citation omitted), overruled on other grounds, United States v. Nordby, 225 F.3d 1053 (9th Cir.2000), citing United States v. Paulino, 935 F.2d 739, 752-54 (6th Cir. 1991) (testimony of nonexpert summary witness regarding cash generated from cocaine sales in drug conspiracy case was admissible under Rule 611(a) where trial court gave limiting instruction and defense had full opportunity to cross-examine); United States v. Gardner, 611 F.2d 770, 776 (9th Cir.1980) (summary chart admissible in tax evasion case under Rule 611(a) because it "contributed to the clarity of the presentation to the jury, avoided needless consumption of time and was a reasonable method of presenting the evidence"); United States v. Scales, 594 F.2d 558, 563-64 (6th Cir. 1979) (summaries of testimonial evidence designed "to aid the jury in its examination of the evidence already admitted" do not come within Rule 1006, but are authorized by Rule 611(a)), cert. denied, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979); 5 Weinstein, supra, at ¶ 1006[03] (summary "prepared by a witness from his own knowledge to assist the jury in understanding or remembering a mass of details ... is admissible, not under Rule 1006, but under such general principles of good sense as are embodied in Rule 611(a)").

RESPECTFULLY SUBMITTED this 1st day of May, 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

 s/ Retta-Rae Randall
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2006, a copy of the foregoing was served electronically on Michael Dieni.

s/Retta-Rae Randall