Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        vs.<br><br>HOLLY MATSON,<br><br>                              Defendant. | Case No. 3:05-cr-100-RRB-JDR<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

Defendant, Holly Jean Matson, by and through counsel Michael Dieni, Assistant Federal Defender, hereby submits her brief in aid of sentencing, now set for July 20, 2006.

   I.   Introduction

At sentencing, Ms. Matson will request that the court consider imposing, at least in part, the alternatives to imprisonment provided by statute.  She is a first offender, with no prior police contacts of any kind.  Her positive contributions to her community are well-documented, and she poses no danger to her community or any other community. A lengthy period of incarceration as the sole response to her offense is unnecessary to

achieve the goals of sentencing. Community work service, restitution, and/or any other options available under the Sentencing Code should be considered for this defendant.

Ms. Matson does feel responsible for the loss suffered by the government. She wishes to work hard to make reparations. To prove her commitment to this end, the Matson family has sold a small parcel of real property to raise approximately $10,000 to help her pay for restitution.

> II. *Legal Framework Allows for Probation or a Fine as an Alternative to Imprisonment*

The offense, theft of blank money orders, is a Class D felony. 18 U.S.C. § 500; 18 U.S.C. § 3559(a)(4). The court is not required to impose a jail sentence; there is no mandatory minimum sentence. The penalty statute of 18 U.S.C. § 500 specifically allows for a fine as an alternative to incarceration. If the court finds that incarceration is "necessary," pursuant to the sentencing factors set forth in 18 U.S.C. § 3553, imprisonment of up to five years is authorized under 18 U.S.C. § 500. The United States Sentencing Guidelines recommend a sentence of 21 to 27 months. PSR ¶ 92. Finally, the federal statute governing Class D felonies specifically allows that a person convicted of a Class D felony is eligible for probation as an alternative to incarceration. 18 U.S.C. § 3561(a).

If the court imposes incarceration, supervised release for up to three years is authorized. 18 U.S.C. § 3583(b)(2). If the court imposes probation, supervision for up to five years is authorized. 18 U.S.C. § 3561(c).

The decision of *United States v. Booker* has broad ramifications for this proceeding. Even if no formal downward departure can be specifically found, the sentencing guideline range is only a factor among factors to be considered by this court.

More importantly, the Ninth Circuit Court of Appeals has specifically declared that the United States Sentencing Guidelines are not to be considered a presumptive basis for a sentence. *United States v. Zavala*, 443 F.3d 1165, 1169 (9th Cir. 2006); *United States v. Menyweather*, 431 F.3d 692, 696-97 (9th Cir. 2005).

The basis for the analysis of any sentence begins with 18 U.S.C. § 3553(a), which raises the fundamental question: What sentence is "sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2)?" This so-called "parsimony provision" is not simply a factor to be considered in determining the sentence – it is the primary guiding principle behind all non-mandatory sentences and represents the hard and fast cap above which the court is statutorily prohibited from sentencing, even if a greater sentence might be recommended by the sentencing guidelines. *See United States v. Denardi*, 892 F.2d 269, 276 (3d Cir. 1989).

Therefore, while the court logically may begin with a discussion of the guidelines, the sentencing guidelines are only one of five factors to be considered in determining the sentence. *Id.; Booker*, 125 S. Ct. at 764-65. The other four factors are (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the need to avoid unwarranted sentencing disparity; and (d) the need to provide restitution. *Id.*; 18 U.S.C. §§ 3553(a)(1), (a)(6)-(7).

The Ninth Circuit has suggested that this court has exceptionally broad authority to be lenient in the context of a first-time offender convicted of a property offense. *United States v. Menyweather*, 431 F.3d 692, 696-97 (9th Cir. 2005). In *United States v.*

*Menyweather*, the trial court imposed a sentence of 40 days, to be served on weekends, as a condition of probation for an employee of the United States Attorney's Office who embezzled approximately $436,000. The defendant had used the money frivolously to travel around the world and buy expensive items for herself. In this context, Ms. Menyweather asserted that a history of depression related to a traumatic incident some ten years earlier had caused her psychological problems. Furthermore, she was the sole support for an eight-year-old daughter. Although the Ninth Circuit concluded that the trial court erred in reliance on these factors as potential downward departures, they found harmless error after *Booker*, because of the inherent authority of the trial judge to issue a lenient sentence.

### III.    The Offense

The offense alleged here is relatively simple. It appears that Ms. Matson commingled her funds with those of the Post Office and got caught on the slippery slope of taking more money than she put back. As is common in Villages in Alaska, she used money orders to pay her bills. Over time, she failed to put as much money into the Post Office cash box as she took out in the form of money orders. The net result was approximately $71,000 in debt to the United States government.

It is significant that Ms. Matson used the money to pay ordinary bills and expenses. The PSR notes as much at ¶ 18, where it states that "many of the money orders were written to creditors." There is no evidence that she engaged in the purchase of expensive extravagances. Her lifestyle is ordinary. Their car is old; the family home

is humble, the result of HUD subsidies. A photograph of the family home is attached. Exhibit A.

A look at the family situation suggests that unfortunate economic circumstances could have played a significant role in the offense. First and foremost, Hank Matson suffered a serious stroke in 1998. Exhibit B. At the end of 2001, he checked back into the hospital for heart related problems. He eventually had to undergo triple by-pass heart surgery early in 2002. *Id.* What had been a source of income for the family, Hank Matson's commercial fishing in Bristol Bay, ceased to exist. PSR ¶ 45.

Finally, Hank and Holly Matson got so far behind on their bills, they filed bankruptcy in 2004.

> IV. *In All Other Aspects of Her Life, Holly Matson Has Been a Positive Influence in Her Community*

She has never been in any kind of trouble before. Holly Matson does not drink, she does not smoke. Nor does she gamble. At age 46, she has lived in the tiny village of Port Heiden for the past 36 years. She knows nowhere else. People in that town know her as the sunny face of Jack's, the only grocery store in town.

At age 17, Holly married Hank Matson, a man about ten years her senior. She and Hank raised two boys, who are now both living and working in Anchorage.

Holly Matson has been the only consistent breadwinner for the family, working for the Post Office since approximately 1985, and taking a second job at Jack's New Meshik Mall (the local grocery store) since 1996. Her employment records suggest that she has been consistently employed since 1985. PSR ¶¶ 56-81.

5

She is well known and well liked in the community. The opinions of the people who have lived with her for decades are based upon the kind of intimate and daily contact only available in a small town. Those opinions suggest that in all other aspects of her life, at a very personal level, Holly Matson has been a giver, not a taker, and a positive influence in the community. There are several letters from various members of the community attached to this memorandum. Exhibits C, D, E, F, G, H, I, J. All repeat the theme that Holly Matson has been an important and valuable and respected member of the Port Heiden community.

Orville Linn, former Mayor of Port Heiden, has known Holly Matson since 1979. Exhibit C. He describes the offense as a "total shock." He notes her contributions to the community, observing that "in children's activities, she volunteered as a helper and even joined our local dancing lessons in the evenings. Her children's health and welfare was always first as we witness[ed] her mothership with her family."

A local pastor, Daniel E. Buckwalter, commented as follows:

> My wife and I have known Holly for well over 20 years. . . . Small villages tend to have small response to our ministry, and there were many times when only one or two would show up for church. If only one came, it was usually Holly. In other words, I know her as a woman who had a heart after God, wanted to do right, and was trying to be faithful, even when it wasn't popular. She was conscientious and sincere about her life.

Exhibit D.

Darlene Christensen writes, as a former resident of Port Heiden, that she has known Holly Matson since 1990.

> . . . I have seen her work, dedication and love for her community. As you should know, Port Heiden is a small village in Bristol Bay. We had one store, one post office, and one gas station. The basic needs of life are very expensive and we often have to order our food and living items from

>   Anchorage. . . . Many times we "borrow" items from other friends and families until our supplies arrive in the mail. Holly Matson has a good compassionate heart. I have seen her extend her own belong[ings] to people who are in need.

Exhibit E.

The five current members of the Native Council of Port Heiden have co-signed a letter describing Holly Matson's positive contributions to the community as follows:

>   Holly is an upstanding citizen who has made many contributions that have positively impacted our Village. Holly is a long-time member of our local charity and has volunteered much of her time for this organization. One of her positions in our charity is assisting with fundraisers. . . .
>
>   Holly never fails to participate in community events. . . .

Exhibit F.

Her employer, Jack Welborne, as the court may recall, testified on her behalf at trial. He, too, wrote a letter for the court, noting as follows:

>   She has worked for me here in the store since 1997. She is very dependable, reliable and honest. She handles quite a bit of cash going through the register and I have had several thousand dollars she has had access to for cashing checks and making change. I have never had any shortages or problems in all these years.
>
>   Holly does not have any bad habits whatever. She has been a good homemaker and raise two boys to adulthood.

Exhibit G.

In summary, by all accounts, Ms. Matson has been a good mother, faithful wife, and a hard working member of her community.

> V. *Argument in Favor of a Probationary Sentence*

The only factor in the 18 U.S.C. § 3553(a) list of issues for sentencing that favors incarceration is the United States Sentencing Guideline recommendation of 21 to 27 months. Several facts from the guideline calculation warrant discussion.

First, the loss, at approximately $71,000, at eight levels up, is less than $2,000 away from only six levels up. U.S.S.G. 26. Were the loss under $70,000, Ms. Matson would be facing a guideline value of 15 to 21 months, instead of 21 to 27.

Other issues could be raised in the old paradigm of downward departures. As noted above, her husband is in poor health. Recently, she has been the only consistent breadwinner for the family as an employee of Jack's grocery store. Hank Matson, with his physical disabilities, will struggle to survive economically without his wife's assistance. *United States v. Leon*, 341 F.3d 928 (9th Cir. 2003) (confirms a six-level downward departure, from 30 months to 10 to 16 months, because defendant is sole care giver of spouse who suffered severe medical problems); *see also United States v. Aguire*, 214 F.3d 1122 (9th Cir. 2000) (four-level downward departure for extraordinary family circumstances related to child care).

In general terms, the court should also consider what might be a disproportionate impact of incarceration on someone with a small town background like Holly Matson. She has never traveled outside the United States and has only very briefly been to states other than Alaska. Imprisonment of her in a federal prison is likely to have a disproportionately harsh effect on her. Gangland street crime is nothing she has ever experienced. Other inmates who go to jail for these types of offenses will see Ms. Matson as easy prey for abuse.

### VI. Restitution is a Factor in 18 U.S.C. § 3553

Ms. Matson will try to show good faith by submitting approximately $10,000 in restitution on the day of sentencing. A lengthy sentence will put the family in further arrears economically and render her less capable of providing future restitution. The need to pay restitution, a factor in 18 U.S.C. § 3553, and her willingness to try do so, supports a smaller sentence that will give her a chance to have the means to pay restitution.

### VII. Comparing Ms. Matson's Offense Crime to That of Others

The mid range of the 21 to 27 month guideline recommendation would put Ms. Matson at 24 months. This court may recall that the court imposed a sentence of 24 months in the case of *United States v. Gregory Rene Walter*, a man who claimed to be part of the Michael Jackson concert tour and conned a charitable investor out of more than $100,000. He used the money to fund world-wide travels and high living, including alcohol and expensive hotels in foreign countries. Mr. Walter had a criminal history. His case is typical in the context of embezzlement-type cases that involve more than a small amount of money, where the defendant takes the money for greed or sport or to support an illegal habit. Here, the evidence points to Ms. Matson using the money for the ordinary expenses of living and the support of her family. Consistency in sentencing should put Ms. Matson in a better position than defendants like Greg Rene Walter.

### VIII. Conclusion

The totality of the circumstances, including Ms. Matson's offense, conduct, and her background, for all of its positive industry, community contribution, the lack of criminal history or any deleterious drug or alcohol problems or mental health issues, all

suggest that she can be a person who will make an effort to pay restitution and stay out of trouble in the future. She is a first offender, without even a prior arrest or parking ticket on her record. There is nothing in this record that would suggest she was anyone like her, would fail to be deterred by a relatively lenient sentence.

DATED this 13th day of July, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on July 13, 2006, a copy of the foregoing document, with attachments, was served electronically on:

Retta-Rae Randall, Esq.

/s/ Michael D. Dieni